UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NATALIE L.,[1]

                        Plaintiff,                    DECISION AND ORDER

-vs-

                                                 23-CV-6712-MAV

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

## INTRODUCTION

In December 2023, Natalie L. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 11 (Plaintiff); ECF No. 14 (Commissioner). For the reasons set forth below, the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Plaintiff's motion [ECF No. 11] is denied.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[2] The regulations governing the evaluation of a claimant's eligibility for DIB under Title II of the Social Security Act are found in Part 404 of Title 20 of the United States Code of Federal Regulations. The regulations governing the evaluation of a claimant's eligibility for SSI payments are found in Part 416. Because the relevant regulations in both Parts are practically identical, citations in this decision to regulations in Part 404 should be read to also reference the regulations applicable to SSI benefits in Part 416 unless otherwise indicated.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

### I. Plaintiff's Applications

Plaintiff filed her application for DIB and SSI in November 2020, alleging a disability onset date of February 13, 2020. Administrative Record ("AR"), 98–99,[3] ECF No. 5. She claimed her ability to work was limited by her depression, anxiety, and learning disability. AR at 317. In March 2021, the Commissioner found that Plaintiff was "not disabled," and her claims for DIB and SSI payments were denied. AR at 71–99. Plaintiff requested a reconsideration of the initial determination, and in July 2021 was again found "not disabled." AR at 100–34.

### II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared with her attorney via video conference on October 5, 2022 for a hearing before Administrative Law Judge Victoria Ferrer ("ALJ"). AR at 30–63. In his opening statement and his pre-hearing brief, Plaintiff's attorney asked the ALJ to consider the possibility that Plaintiff's depression met Listing 12.04 for "depressive, bipolar and related disorders" in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *See* AR at 36–37, 437–38. Thereafter, Plaintiff testified that she was let go from

---

[3] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

her previous jobs as a hostess at a restaurant, a front-end attendant at Walmart, a helper at Chuck E. Cheese, and a housekeeper at a hotel. AR 37–45. She also stated that she was being treated for anxiety and depression, both via Zoom sessions at Genesee Mental Health Center and with medication. AR at 45–47. She said that she was hospitalized for cutting herself while in high school, that she has difficulty being in crowded public places, that she doesn't drive, and that her "depression doesn't let [her] leave her room" or make good use of her free time. AR at 48–50.

The ALJ also heard testimony from Vocational Expert Frank Linder (the "VE"), who testified that a hypothetical claimant with an RFC identical to that which the ALJ ultimately found Plaintiff to have would be capable of work as an office helper, a collator operator, and a photocopy machine operator. AR at 57–59.

## III. The ALJ's Decision

On December 20, 2022, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB or SSI. AR at 23.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[4] through December 31, 2020, and had not engaged in substantial gainful activity since her alleged onset date of February 13, 2020. AR at 13. Then, at step two of the Commissioner's "five-step, sequential evaluation process," [5] the ALJ

---

[4] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[5] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3)

determined that Plaintiff had two severe impairments: major depressive disorder and borderline intellectual functioning. AR at 14. She also considered Plaintiff's scoliosis and dysuria, but found that these conditions did not cause more than a minimal restriction on Plaintiff's ability to perform basic work functions. AR at 14.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 14–17. The ALJ specifically considered whether Plaintiff's mental impairments met or medically equaled the criteria for Listing 12.04 for "depressive, bipolar and related disorders" and Listing 12.11 for "neurodevelopmental disorders." AR at 14.

In doing so, she applied the "special technique" set forth in 20 C.F.R. § 404.1520a for the evaluation of mental impairments to rate the degree of Plaintiff's functional limitation resulting from those impairments in four broad areas of mental functioning (also referred to as the "paragraph B" factors): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c). Based on the evidence in the

---

whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

record, the ALJ found that Plaintiff had "moderate limitations" in each of the four areas of mental functioning. AR at 14–16. *See also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(2)(c) (providing that a rating of "moderate limitation" indicates that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.")

Then, before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity[6] ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff could perform only simple and repetitive tasks; she could understand, remember, and carry out only simple instructions; she could adapt to only simple changes in the work routine; she could not interact with the public, should have no team tasks with co-workers, and could have only occasional supervision; she could make decisions on only simple matters; and she *could not* meet fast paced, high production demands but *could* meet production quotas in a shift. AR at 17–21.

At step four, based on Plaintiff's RFC and the testimony of the VE, the ALJ found that Plaintiff was unable to perform her past relevant work. AR at 21. However, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, and found that Plaintiff could perform the requirements of other representative occupations that existed in significant numbers in the national economy, such as office helper, collator operator, and photocopy

---

[6] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

machine operator. AR at 22. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI payments. AR at 23.

On October 23, 2023, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–7. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 42 U.S.C. § 1382c(a)(3)(A) (adopting the same definition of "disabled" for SSI eligibility).

Where an individual's application for DIB or SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d

at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff presents two primary issues for the Court's review. First, she argues that the ALJ erred by failing to follow Social Security Ruling 11-2p ("SSR 11-2p"), which sets forth the Commissioner's policy on "Documenting and Evaluating Disability in Young Adults." ECF No. 11-1 at 13–22. Second, she contends that the ALJ erred in her assessment of Plaintiff's RFC and in her evaluation of the prior medical findings of the state agency psychological consultants. *Id.* at 23–30. The Commissioner maintains that the ALJ's decision is perfectly consistent with a proper reading of SSR 11-2p (ECF No. 14-1 at 20-25), and that the ALJ's RFC finding was supported by substantial evidence (*Id.* at 25–30).

After a thorough review of the record, the parties' papers, and the references cited by the parties, the Court agrees with the Commissioner that the ALJ did not commit legal error, and that the ALJ's decision is supported by substantial evidence. The Court addresses both arguments in a single discussion.

## I. Plaintiff's Arguments

Plaintiff maintains that the ALJ committed legal error by failing to evaluate her school and vocational rehabilitation records, which Plaintiff contends is required by SSR 11-2p. ECF No. 11-1 at 13–20. Pointing to school records prior to her

graduation in 2017 (including a 2016 report from school psychologist Beth Curtis), and evidence that she received post-graduation support services from Adult Career and Continuing Education Services – Vocational Rehabilitation ("ACCESS-VR"), Plaintiff argues that "[t]he above evidence was required to be evaluated and considered under SSR 11-2p, and the opinions were required to be evaluated under the revised regulations." *Id.* at 14. In response, the Commissioner argues that that Plaintiff misinterprets the requirements of SSR 11-2p, and that the ALJ's decision applied the correct legal standards and was supported by substantial evidence. ECF No. 14-1 at 20–31. The Court agrees with the Commissioner that under the facts of this case, the ALJ was not required to discuss Plaintiff's school records, and that ALJ's decision was supported by substantial evidence.

### A. SSR 11-2p

The stated purpose of Social Security Ruling 11-2 is to "provide guidance on how we apply our policies when we determine whether a young adult is disabled under our rules." *Documenting & Evaluating Disability in Young Adults*, SSR 11-2P, 2011 WL 4055665, at *1 (S.S.A. Sept. 12, 2011). SSR 11-2p defines "young adult" as a person between the age of 18 to approximately 25, and makes clear that young adults are subject to both the same definition of "disability" as other adults, and the same rules for making disability determinations or decisions. *Id.* at *2.

Nevertheless, SSR 11-2p acknowledges that the evidence the Commissioner will consider in making disability determinations for young adults is "generally the same as, or similar to, the evidence we consider for making disability determinations

9

for older adolescents." *Id.* (citing 20 C.F.R. § 416.926a(g)–(k)). In particular, the ruling states that in addition to medical evidence, evidence from other sources such as family members, educational personnel, public and private social welfare agency personnel, friends, neighbors, and clergy can be helpful in evaluating "the severity and impact of a young adult's impairment(s)." *Id.* at *5.

Yet although SSR 11-2p provides detailed guidance on a wide variety of other sources that the ALJ may find helpful in evaluating a young adult's functional capacity, it does not mandate the evaluation of each source in every case. Rather, the ALJ's duty is simply to "consider all relevant evidence in the case record to determine whether [the] young adult is disabled." *Id.* at *4; *see also id.* at *18 (requiring review only of "all of the *relevant* evidence" prior to a finding about disability). The evidence relevant to the young adult's disability is "based on the facts of the case." *Id.* at *4.

Plaintiff argues that SSR 11-2p is binding on the ALJ, and cites three cases for the proposition that SSR 11-2p required the ALJ in this case to examine and discuss Plaintiff's school records. *See Joseph G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00046-DB, 2024 WL 641264, at *6 (W.D.N.Y. Feb. 15, 2024); *Ka'deef M. v. Comm'r of Soc. Sec.*, No. 3:20-CV-787 (DJS), 2021 WL 2952801, at *5–6 (N.D.N.Y. July 14, 2021); and *Samuel v. Comm'r of Soc. Sec.*, 2015 WL 5774850, at *13 (E.D.N.Y. Sept. 30, 2015). To be sure, all Social Security Rulings are binding on ALJs. *See Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984). The issue in the present case is not that SSR 11-2p is not binding on the ALJ; the issue is that under the facts of this case, SSR 11-2p does not require the ALJ to discuss Plaintiff's school records in her decision.

Each of the three cases that Plaintiff relies upon present a set of facts distinct from the instant case. To begin with, while *Samuel* makes mention of guidance offered in SSR 11-2p, the issues in that case that called for remand were the ALJ's failure to advise the claimant of his right to counsel, and the ALJ's failure to develop the record by obtaining records from the claimant's psychiatric treatment provider. *Samuel*, 2015 WL 5774850, at *13–14. *Samuel* does not stand for the proposition that the ALJ must in every circumstance consider a young adult's school records. Neither do *Joseph G.* and *Ka'deef M.*, both cases in which the claimants had "limited mental health treatment outside the educational context and . . . lack[ed] . . . any significant work experience from which to draw comparisons . . . ." *Joseph G.*, 2024 WL 641264, at *6 (quoting *Ka'deef M.*, 2021 WL 2952801, at *6) (internal quotation marks omitted). Under the circumstances present in *Joseph G. and Ka'deef M.*, "school records may provide the most comprehensive insight into [the claimant's] level of functioning in the" relevant period. *Id.*

In the present case, by contrast, there was ample evidence in the record from the relevant time period[7] for the ALJ to make a determination without explicit consideration of Plaintiff's school records from 2013–2017 (AR at 1100–25), or the "individualized plan for employment" support that she apparently received on February 21, 2020 (AR at 371–75) and between August 2017 and December 2018 (AR at 376–420).

---

[7] Whereas the relevant time period for a DIB application runs from the alleged onset date to the date of application, "[t]he relevant time period for an SSI benefits application is 'the date the SSI application was filed, to . . . the date of the ALJ's decision.'" *See Williams v. Colvin*, 98 F. Supp. 3d 614, 631–32 (W.D.N.Y. 2015) (quoting *Frye ex rel. A.O. v. Astrue*, 485 Fed. App'x 484, 488 n.2 (2d Cir. 2012)).

**B. The Evidence Supporting the ALJ's Decision**

Although Plaintiff's mental health treatment provider, Genesee Mental Health Center, stated that they were unable to opine on Plaintiff's work readiness and employability because their focus was on stabilizing symptoms and meeting goals for treatment (AR at 1432), the ALJ's decision discussed in detail the opinions of two consultative examiners, the prior administrative medical findings of two state agency psychological consultants, and Plaintiff's longitudinal mental health treatment record between 2019–22. Thus, the ALJ was not required to consider Plaintiff's school records from 2013–17, and her decision was based on substantial evidence.

Todd Deneen, Psy.D., performed a consultative psychiatric exam of Plaintiff in January 2020. AR at 443–46. He found deficits in her attention and memory, that her intellectual functioning was below average, and that her insight and judgment were only fair. AR at 444–45. Yet he also noted that she was cooperative, her social skills were adequate, she was appropriately dressed and groomed, her speech was fluent, and her thinking was coherent and goal directed. AR at 444. Consequently, Dr. Deneen opined that, among other things, Plaintiff would have no limitation understanding, remembering, and applying simple directions and instructions and interacting appropriately with supervisors, co-workers, and the public. AR at 445. The ALJ did not find Dr. Deneen's opinion fully persuasive because, although it may have been supported by Dr. Deneen's exam, the ALJ found it inconsistent with the longitudinal record, which demonstrated that Plaintiff had greater limitations with respect to complex instructions and interacting with others. AR at 19. This evaluation

12

of Dr. Deneen's opinion was consistent with the ALJ's obligation to assess the supportability and consistency of medical opinions set forth in 20 C.F.R. § 404.1520c.

Christine Ransom, Ph.D. performed a consultative psychiatric exam in March 2021. AR at 625–32. Dr. Ransom found that Plaintiff's attention and memory were intact, and that her insight and judgment were good, but that her intellectual functioning was in the borderline range, with a full scale IQ score of 74. AR at 626–27. Importantly, Dr. Ransom also performed an "Intelligence Evaluation" that assessed many of the same areas as those assessed in school psychologist Dr. Curtis's report in 2016. *Compare* AR at 377 (Dr. Curtis) with AR at 630–31 (Dr. Ransom). After administering the Wechsler Adult Intelligence Scale, Dr. Ransom concluded that Plaintiff's full scale IQ, working memory, and processing speed were all in the "borderline" range; her verbal and perceptual functioning were in the "low average" range; and her generalized reading ability and language skills were "low average," while her generalized arithmetic skills were "borderline." AR at 630–31.

Based on the results of her exam and intelligence evaluation, Dr. Ransom opined that Plaintiff:

> [W]ill show no evidence of limitation in understanding, remembering, and applying simple directions and instructions; maintaining personal hygiene and appropriate attire; and awareness of normal hazards and taking appropriate precautions. She will evidence mild difficulty using judgment and reasoning to make work-related decisions. She will have moderate difficulty interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being. Areas of difficulty are secondary to bipolar disorder with psychotic features, currently moderate.

13

AR at 626. The ALJ found this opinion "generally persuasive" because it was consistent with the longitudinal record and Dr. Ransom's examination findings. AR at 20. This evaluation of Dr. Ransom's opinion was consistent with the ALJ's obligation to assess the supportability and consistency of medical opinions set forth in 20 C.F.R. § 404.1520c.

The ALJ also considered the prior administrative medical findings of state agency psychological reviewers L. Dekeon, Ph.D. and H. Tzetzo, M.D. In March 2021, Dr. Dekeon reviewed Plaintiff's record (including her February 2020 visit to vocational consultant ACCESS-VR). AR at 77–79. With respect to the four areas of mental functioning, Dr. Dekeon found that Plaintiff had a mild restriction understanding, remembering, or applying information, and moderate restrictions interacting with others, concentrating and maintaining pace, and adapting or managing herself. AR at 78. Further, he found that "[t]he totality of the evidence shows claimant retains the capacity for simple, low contact work." AR at 79. Dr. Tzetzo reviewed the entire record in July 2021, including additional treatment records not available to Dr. Dekeon, and agreed with Dr. Dekeon's findings with regard to the four areas of mental functioning, and with his assessment that "[t]he totality of the evidence shows claimant retains the capacity for simple, low contact work." AR at 124.

Like Dr. Ransom's opinion, the ALJ found Dr. Dekeon's and Dr. Tzetzo's prior administrative medical findings to be "generally persuasive because they [were] supported by and consistent with [Plaintiff]'s longitudinal treatment . . . ." AR at 20.

This evaluation of the prior administrative medical findings was consistent with the ALJ's obligation to assess the supportability and consistency of medical opinions set forth in 20 C.F.R. § 404.1520c.

As to longitudinal treatment, the Court finds that Plaintiff's assertion that the ALJ considered only the most favorable parts of the treatment notes to be without basis. *See* ECF No. 11-1 at 22–30. The ALJ summarized her review of Plaintiff's mental health treatment record as follows:

> The medical evidence of record reflects that in December 2019, her examination was unremarkable ([AR at 501]). Upon examination in January 2020, her appearance was appropriate, her eye contact was appropriate, her speech was normal, her thought process was logical and goal directed, and her intellectual functioning was in the below average range but she was depressed, her attention and concentration were impaired, her memory was impaired, and her insight and judgment were fair ([AR at 443–46]). In June 2020, she had a normal mood and affect, her speech was normal, and her behavior was normal ([AR at 1075]). In September 2020, her speech was clear, she had no delusions, her thought process was logical, she was euthymic with a congruent affect, her impulse control was good, her insight and judgment were good, and she had no suicidal ideations ([AR at 460]). In February 2021, her attention was normal, her speech was normal, her psychomotor activity was normal, her mood and affect were normal, her memory was intact, her sleep was normal, and her judgment and insight were intact ([AR at 1148]). In March 2021, her hygiene and grooming were adequate, her speech was normal, her thought processes were coherent and goal directed, her attention and concentration were intact, her recent and remote memory were intact, and her insight and judgment were good but she had a flat affect and her full-scale IQ was 74 ([AR at 625–32]). In April 2021 she was sad, depressed, and anxious but her examination was otherwise unremarkable (AR at 643, 704, 902]). In July 2021, she had a normal mood and affect and she was orientated ([AR at 1137]). In October 2021, she was depressed and tearful but she had no thoughts of suicide ([AR at 1417–18]). In January 2022, her mood and affect were normal, her behavior was normal, her thought content was normal, and her judgment was normal ([AR at 1130]). In April 2022, she was sad with fair judgment and insight but her examination was otherwise normal ([AR at 1384]). In July 2022, her examination was benign ([AR

at 1169]). In August 2022, her attention was sustained, her memory was intact, her thought process was linear, she had good eye contact, her appearance was neat, she was euthymic, she had no suicidal ideations, her insight was good, and her judgment was fair ([AR at 1354]). Longitudinally she treated with multiple modalities including medication and counseling with some relief from her symptoms ([AR at 447–623, 1350–1431]).

AR at 18–19.

An independent review of the record indicates that the ALJ's decision reflects a fair reading of the evidence. As is evident from the foregoing passage, "[r]ather than cherry pick evidence, the ALJ considered evidence both favoring and not favoring Plaintiff." *Johnston v. Comm'r of Soc. Sec.*, No. 23-CV-05054 (SDA), 2024 WL 3442664, at *15 (S.D.N.Y. July 17, 2024). As the ALJ explained, Plaintiff's complaints were "supported somewhat" by the objective evidence, and therefore the ALJ identified mental restrictions in her RFC. AR at 21. However, the ALJ also provided a sufficient explanation regarding why the evidence did not support a finding that Plaintiff was more limited. AR at 20–21. Where the ALJ's decision is supported by substantial evidence, it is not the Court's role to reweigh the evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F. 3d 118, 122 (2d Cir. 2012) (Court must "defer to the Commissioner's resolution of conflicting evidence.") (internal citation omitted).

In short, the ALJ did not err by not explicitly discussing Plaintiff's school and vocational counseling records where those records were from outside of the relevant time period and there was ample evidence from during the time period that the ALJ could consider; the rationale of the ALJ's decision was clear; and the decision applied the proper legal standards and was supported by substantial evidence.

CONCLUSION

For the foregoing reasons, Plaintiff Natalie L.'s motion for judgment on the pleadings [ECF No. 11] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:      March 31, 2025
            Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

17